**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **SECTION: DUTY MAG** |
| **JUAN CARLOS CASTRO-IGNACIO** | **25-CR-94** |
| **OSBORN NASH BODDEN WELCOME** | **25-CR-95** |
| **JOSUE ALEJANDRO GUERRERO** | **25-CR-96** |
| **ARNOL HUMBERTO REYES-GALINDO** | **25-CR-101** |
| **HENRI MILTON VASQUEZ** | **25-CR-111** |

**ORDER & REASONS**

The five Defendants in these cases are individually charged in separate bills of information with "willfully" failing or refusing to file an application for alien registration, in violation of Title 8, United States Code, Section 1306(a). The Court consolidated the matters to conduct two preliminary hearings to determine whether the Government could demonstrate probable cause to believe any of these Defendants acted willfully in violation of the statute.[1]

The Government alleges that each Defendant, "being an alien required to apply for registration and to be fingerprinted in the United States, did willfully fail or refuse to file an application for such registration." (Rec. doc. 1). This allegation references §1302 of the Alien Registration Act, which imposes a "duty" on noncitizens present in the United States for at least 30 days "to apply for registration and to be fingerprinted." The related criminal enforcement provision, § 1306(a), creates a Class B misdemeanor for "[a]ny alien required

[1] The Court's consolidation of these cases for these limited purposes was made without objection by any party, although the Government did object to the Court holding a probable cause hearing, an objection that will be addressed later in this Order.

to apply for registration and be fingerprinted . . . who willfully fails or refuses to make such application."

At the Defendants' initial appearance, the Court appointed counsel to represent each of them. Counsel then moved for preliminary hearings in each case under Rule 5.1 of the Code of Criminal Procedure. The Court held two probable cause hearings, one for Defendants Welcome and Castro-Ignacio and a second (after receiving briefing from the parties) on the remaining three defendants. At the first hearing, the Government made an oral objection to the Court holding any probable cause hearing on these petty offenses.[2] *See* (Transcript of Probable Cause Hearing rec. doc. 10 at 5–6, *USA v. Welcome* (No. 25-cr-95)). [3] Owing to the manner in which the Government has elected to proceed against these Defendants—in a bill of information unsupported by any of the normal suggestions of probable cause—the Court granted Defense counsel's request for preliminary hearings as to each Defendant and overruled the Government's oral objection. (*Id.*).

Following the first preliminary hearing, the Court accepted briefing on the probable cause question from the parties and held a hearing on the matter in the cases involving Defendants Guerrero, Reyes-Galindo, and Vasquez.

At the hearing, the Court (1) considered the positions advocated in brief by the parties, (2) heard the arguments of counsel, and (3) considered counsel's responses to the Court's many questions (most of which were directed at the Government). Based on everything presented, the Court found no probable cause to hold the Defendants on the

[2] Counsel for the Government also indicated they would brief that objection to the Court, but when the Government's brief was filed in the present cases, no such objection was made. *See, e.g.*, (Gov't Memo rec. doc. 7, *USA v. Guerrero* (No. 25-cr-96)). Accordingly, the Court deems it to have been waived in these cases.

[3] At the preliminary hearing for those two Defendants the Court found no probable cause and dismissed the bills of information against them, ruling from the bench. (*See* rec. doc. 9, *USA v. Welcome*, No. 25-cr-95; rec. doc. 9, *USA v. Castro-Ignacio*, No. 25-cr-94). The Government has filed Notices of Appeal in both of those dismissals.

charge levied against each of them (as it had after the first hearing). I also promised the parties written reasons for both of those decisions.

These are those reasons.

We begin with the statutory regime under which these individuals have been charged with petty offenses by the United States Department of Justice.

## I. BACKGROUND

### *A. The Alien Registration Act of 1940, the Immigration and Nationality Act of 1952, and Present-Day Enforcement*

In 1940, Congress enacted the Alien Registration Act, also known as the Smith Act, as a national security measure intended to identify and remove foreign enemies living within the United States. Pub. L. No. 76-670, 54 Stat. 670 (1940) (codified at 8 U.S.C. § 451 (repealed 1952)); *see also* Jonathan Weinberg, *Demanding Identity Papers*, 55 Washburn L.J. 197, 203 (2015) (collecting historical sources); *see also* Nancy Morawetz and Natasha Fernández-Silber, *Immigration Law and the Myth of Comprehensive Registration*, 48 UC Davis Law Review 141, 143, 148 (2014). The Act instructed aliens (excluding foreign government officials and their families) who were present in the United States, 14 years or older, and who remained in the country for at least 30 days, to apply for registration and be fingerprinted at a local post office. *See* Pub. L. No. 76-670 §§ 31(a), 32(b), 33(a), 54 Stat. at 673–74. Upon filling out a general registration form provided the post office, the alien was issued form AR-3, a registration receipt that itself conferred no immigration status or benefit. *See* U.S. CITIZENSHIP AND IMMIGRATION SERVICES, POLICY MANUAL, https://perma.cc/Q87R-AX7Z. Those who

"willfully fail[ed] or refus[ed]" to apply for registration were subject to misdemeanor criminal penalties.[4] Pub. L. No. 76-670 § 36(a), 54 Stat. at 675.

Over the decades, these statutory requirements were diluted by regulation. In 1944, the Immigration and Naturalization Service ("INS") eliminated its division that had been responsible for universal registration and shifted registration from post offices to ports of entry and INS offices. *See* U.S. NATIONAL ARCHIVES, FLEXOLINE INDEX (FLEX), https://perma.cc/5PKF-LPZD. Eventually, the INS suspended the use of form AR-3 entirely, replacing it with preexisting immigration forms that were only available to aliens with legal immigration status.[5] *See* Registration and Fingerprinting of Aliens in Accordance with the Alien Registration Act, 1940, 15 Fed. Reg. 579–80 (Feb. 2, 1950). Since 1950, then, for aliens who had entered the country illegally, there existed no designated process or prescribed form by which they could apply for registration.

The Immigration and Nationality Act of 1952 ("INA") eventually supplanted the Alien Registration Act, yet this anomaly remained—while the INA incorporated the prior Act's registration mandates, there was still no process or form by which aliens who had entered the country illegally could comply with those mandates. *See* Immigration and Nationality Act, Pub. L. No. 82-414, §§ 261–64, 66 Stat. 163, 223–25 (codified at 8 U.S.C. §§ 1201(b), 1301–06) (1952)). Beyond the old Smith Act requirements, the INA also included an additional requirement that aliens ages 18 and older carry proof of registration "at all times." 8 U.S.C. § 1304(e). Moreover, like its predecessor, *i.e.*, the Alien Registration Act, the INA

[4] "Any alien required to apply for registration and to be fingerprinted who *willfully fails or refuses* to make such application or to be fingerprinted, and any parent or legal guardian required to apply for the registration of any alien who willfully fails or refuses to file application for the registration of such alien shall, upon conviction thereof be fined not to exceed $1,000 or be imprisoned not more than six months, or both." Pub. L. No. 76-670 § 36(a), 54 Stat. at 675 (emphasis added).

[5] For example, Form I-151 for lawful permanent residents and Form I-94 for aliens with a record of lawful entry.

makes it a crime to "willfully fail[ ] or refus[e]" to apply to register or be fingerprinted, punishable by a fine and/or up to six months of imprisonment. *Id.* § 1306(a).

It is under this last provision (a federal petty offense) that Defendants in these matters have been charged.

This was the state of the law for more than 70 years, until President Trump issued Executive Order 14159, Protecting the American People Against Invasion (Jan. 20, 2025), 90 Fed. Reg. 8443 (Jan. 29, 2025). Section 7 of that Order directs the Secretary of Homeland Security, in coordination with the Secretary of State and the Attorney General, to take all appropriate action to:

> Immediately announce and publicize information about the legal obligation of all previously unregistered aliens in the United States to comply with the requirements of part VII of subchapter II of chapter 12 of title 8, United States Code [8 U.S.C. 1301–06];
>
> Ensure that all previously unregistered aliens in the United States comply with [8 U.S.C. 1301–06]; and
>
> Ensure that failure to comply with the legal obligations of [8 U.S.C. 1301–06] is treated as a civil and criminal enforcement priority.

*Id.* Apparently recognizing the absence in the federal regulations or rules of a form or other vehicle by which aliens who had entered the country without inspection could comply with the registration mandate,[6] the Department of Homeland Security ("DHS"), in March

[6] The Interim Final Rule contains this explanation for the creation of the new form under Section III, "Basis and Purpose of the IFR":

> Following issuance of this Executive Order, DHS reviewed the registration regulations at 8 CFR part 264 and determined that it would be appropriate to designate a general registration form in addition to those already identified in the regulations. DHS believes that a general registration option may improve registration outcomes for certain groups of aliens. For instance, under current regulations, in general:
>
> *Aliens who entered without inspection and have not otherwise been encountered by DHS lack a designated registration form*.

2025, published an Interim Final Rule ("IFR") creating a new online general registration form, Form G-325R. *See* Alien Registration Form and Evidence of Registration, 90 Fed. Reg. 11793, 11795–96, 11800 (March 12, 2025). The IFR allows for submitting a Form G-325R to apply for registration under the statute and regulations, and the proof of filing a G-325R as evidence of registration under the statute and regulations. The new Rule went into effect on April 11, 2025. *Id.*

### *B. The Legislative History on the Meaning of "Willful" Failure or Refusal to Register*

Relevant here are the lengthy discussions of and debate over the meaning of the term "willfully fails or refuses" that are documented in the legislative history of the Alien Registration Act. In one instance, legislators discussed the meaning of willful failure to apply to register during a debate over whether the penalty for failure to do so should include deportation:

> Mr. RUSSELL. Yes; but, Mr. President, of course the very persons this bill is designed to affect, the very ones it is important that we know something about, are the ones who will resort to fraud in connection with registration. Hundreds of thousands of aliens in this country will gladly comply with the provisions of this bill. From aliens of that type this country has nothing to fear; but those who are going to resort to fraud, and willfully and knowingly refuse to register, certainly should be dealt with more harshly than some little justice-of-the-peace or municipal-court or police-court punishment of $100 or 30 days in jail. This provision says "willfully refuses." *We would not punish for willfully refusing a man who did not file any application because he did not know about the necessity of doing it. It will be necessary to prove intent to perpetrate a fraud on the Government of the United States.* If that is done, I think the man should be deported.

---

> Even an alien who entered without inspection and who is later encountered by DHS, such as by applying for (or being granted) asylum or Temporary Protected Status (TPS), would not typically use the registration forms identified in § 264.1(a) when applying for asylum or TPS.

*See* 90 Fed. Reg. at 11795 (emphasis added).

87 Cong. Rec. 8340, 8344 (daily ed. June 15, 1940) (statement of Sen. Russell) (emphasis added).

Later in connection with a similar discussion, a Senator expressed his confusion with the meaning of "willful" and his desire to clarify the term, particularly when used this context of willful failure or refusal to apply to register:

> Mr. BROWN. Refusal contains in it the meaning of the word "willful"; but it seems to me that "failure" is something with which the will does not have very much to do.
>
> Mr. MILLER. Mr. President, if the Senator will look at the bill . . . he will find . . . running through the entire section, that the expression "willfully fails" also means "willfully refuses." Of course, *a man cannot willfully refuse to do something about which he does not know anything.* I believe the whole context of the section will meet the objection or suggestion made by the Senator.
> . . .
>
> Mr. CONNALLY. Let me suggest to the Senator from Michigan that to my mind "willfully," in law means with an evil intent, with an improper purpose. It is wholly distinguishable from "willingly." It means with some improper purpose and some illegal intent. I think it will be found that the law dictionary so defines it.
>
> Mr. BROWN. Mr. President, what is really meant here, it seems to me, is that the alien, with knowledge of the fact that there is such a requirement, fails to appear and be registered.
>
> Mr. CONNALLY. Yes; that is the effect of it. But we do not want to require the Government to prove that he knew it, because it is very hard to prove what is in a man's head. If we can prove that he had knowledge, or should have had knowledge, and then innocently failed, he is not guilty. If he did not have knowledge, and failed to comply, he is innocent. But "willfully" implies a wrongful purpose, to evade, not to comply with the law.

*Id.* at 8346. During that discussion, one Senator mentioned that this bill must go to conference, and that therein the conferees will give the meaning of "willful" attention if necessary. *Id.* (statement of Sen. Miller). In discussing the results of that conference, a

Representative expressed his satisfaction with the penalty that legislators ultimately decided on for willful failure to register:

> Mr. CELLER. . . . Furthermore, I think the conferees have done a good job; because the punishment is not too great that falls upon the alien who *deliberately* fails to register. There must be proof brought by the authorities that the alien willfully refuses to register himself or a minor under his charge. If there are cases or hardship, old persons above 70 or 80 who do not know the statute, who cannot read or write English, to whom knowledge has not been brought home as to the necessity of registration, it must be proved in such cases that they willfully refused to register.

87 Cong. Rec. 1929, 1940 (daily ed. June 22, 1940) (statement of Rep. Celler) (emphasis added). These exchanges strongly suggest consensus among legislators that some knowledge or bad intent on the part of the alien is required for there to be a finding of a "willful" failure or refusal to register.

As explained above, the Alien Registration Act was later supplanted by the INA. Congress re-codified the registration provision, adopting the willful failure or refusal to register language of the Alien Registration Act. *Compare* Pub. L. No. 82-414, § 266(a), 66 Stat. 163, 225 *with* Pub. L. No. 76-670, § 36(a), 54 Stat. 670, 675. The legislative history of the INA reveals no change in the intended meaning of willful failure to register. Indeed, there is little debate on that language at all. However, there is some discussion of the meaning of willful as used in other instances within the same Act – during a discussion of willful failure to leave the country, one Representative stated:

> Mr. ARENS. I think you will find that before the alien is subject to a criminal prosecution under the language of the hill, and under the language of the Internal Security Act, he must willfully fail or refuse to depart, or he must willfully fail or refuse to make timely application in good faith and must willfully fail or connive or conspire to do other things. *Just mere failure on the part of the alien* to leave the United States does not subject him to criminal prosecution.

*Joint Hearings Before the Subcommittees of the Committees on the Judiciary Congress of the United States*, 82nd Cong. 1, 436 (1951) (statement of Rep. Arens). That language suggests that "willful" retained its same meaning in the Alien Registration Act, *i.e.*, that that some knowledge or intent on the part of the alien is required under the statutory scheme.

## II. LAW AND ANALYSIS

### *A. The Meaning of "Willfully"*

There is no dispute that that per the language of § 1302, each Defendant was required to apply to register as detailed above. Thus, the issue before the Court is whether the Government can demonstrate probable cause to support the charge that the Defendants acted "willfully" in violation of § 1306(a).

"The word 'willfully' is sometimes said to be a word of many meanings whose construction is often dependent on the context in which it appears." *Bryan v. United States*, 524 U.S. 184, 191 (1998); *see also United States v. Arditti*, 955 F.2d 331, 340 (5th Cir. 1992). In *Ratzlaf v. United States* the United States Supreme Court interpreted the term in the context of the Bank Secrecy Act, emphasizing the "complex[ity] of provisions in which [the statutes at issue] are embedded." 510 U.S. 135, 139–48 (1994). There, the Court carved out an exception to the traditional rule that "ignorance of the law is no excuse," finding that Congress intended the provision at issue to require the Government to prove that the defendant acted with knowledge that his conduct was unlawful. *Id.* at 149. Later, however, in *Bryan v. United States*, the Supreme Court distinguished *Ratzlaf* as involving a highly technical statute and interpreted the same term—"willfully"— as used in a different statute, to require proof only that the defendant knew his conduct was unlawful, not that he also knew of a specific law that he violated. 524 U.S. at 193.

Defendants here argue that, considering the context and complexity of the statutory and regulatory regime at issue here, some subjective awareness and intentional violation of § 1306(a) is required. The Court agrees.

Here, the term "willfully" is used in the context of immigration law, a notably complex area of law. *See Lok v. Immigr. & Naturalization Serv*., 548 F.2d 37, 38 (2d Cir. 1977) ("The Tax Laws and the Immigration and Nationality Acts are examples we have cited of Congress's ingenuity in passing statutes certain to accelerate the aging process of judges."). However, this Court need not determine where on the spectrum of complexity the INA falls compared to the statutes considered in *Bryan* and *Ratzlaf*. Because, unlike *Ratzlaf* and *Bryan*, this Court has abundant legislative history available to it evidencing Congress's intention in selecting the language at issue. The legislative history of the INA and Alien Registration Act is clearly indicative of legislative intent that an alien have some subjective knowledge of the duty to apply to register and an "evil intent" or improper purpose" to avoid that duty. 87 Cong. Rec. at 8346 (statement of Sen. Connally).

In declining to consider legislative history of the Bank Secrecy Act in *Ratzlaf*, the Court stated, "we do not resort to legislative history to cloud a statutory text that is clear." 510 U.S. at 147–48. And in *Bryan*, the Court concluded that the legislative history was too ambiguous to offer meaningful assistance. 524 U.S. at 196. Here, the statutory and regulatory language is hardly "clear," as it was in *Ratzlaf.* The *Ratzlaf* Court referenced numerous court interpretations of the "willfulness" requirement in other provisions in the same subchapter of the statute at issue in that case. 510 U.S. at 141. This Court has no similar body of caselaw for reference, and there is much confusion over this language, including the very availability

of a form prescribed for use by aliens such as these Defendants. And unlike in *Bryan*, the legislative history of the INA is anything but ambiguous.

It is worth noting as well that, because this 1940s-era registration requirement was essentially defunct and abandoned for the past 70 years, there is scant point of reference—other than the cited legislative history—by which to determine its meaning. Thus, as the law instructs, the Court defers to legislative history and what little caselaw it can find. *United States v. Kay*, 513 F.3d 432, 445 (5th Cir. 2007) ("To address potential statutory ambiguity, the Supreme Court has relied upon 'common usage,' dictionaries, the societal circumstances surrounding the passage of an act, legislative intent derived from the language of an act, and legislative history to clarify a law's meaning).

No doubt aware that the legislative history of the INA leans heavily toward a heightened *mens rea* requirement, the Government has constructed what appears to the Court to be a substantially oversimplified argument to the contrary. It analogizes these cases to *Bryan* and other Fifth Circuit precedent interpreting the term "willfully" in a non-immigration context to argue that the unlawful act of illegal entry <u>alone</u> satisfies the "willfulness" requirement of § 1306(a), because "illegally entering the United States—and not informing immigration officials—is not highly technical matter." (Gov't Memo rec. doc. 7 at 8–9, *USA v. Guerrero* (No. 25-cr-96)). For several reasons, that cannot be what the verbiage in this statute means.

First and most notably, such an interpretation would render the term "willfully," as used in § 1306(a), entirely superfluous. Construing a statute in a manner that renders its language superfluous would violate the most fundamental canons of statutory

interpretation.[7] If these Defendants violated § 1306(a) automatically on the 31st day they remained in the United States without permission, then there would be no need or reason to use the term "willful" in the statute.

Second, the Government's proposed interpretation ignores the congressional intent evidenced in the robust legislative history of the INA and its predecessor statute, the Alien Registration Act, both of which suggest that some level of subjective knowledge or bad intent is required.

Third, the argument overlooks that entering the country illegally and remaining without permission is, in and of itself, a separate federal offense—one for which none of these Defendants was charged. *See* 8 U.S.C. § 1325. That statute does not require a showing of willful conduct by the alien who enters the United States illegally. But the Government chose here to charge the Defendants under a different statute—one that does require willful conduct.

Finally, there is the question of whether the statutory and regulatory scheme at play here is "complex" enough to require the government to demonstrate the highest level of willful conduct—knowledge of the terms of the statute and that the defendant has violated it. In this regard, the Government places great weight on the Fifth Circuit's interpretation of "willfully" in *U.S. v. Kay*. 513 F.3d 432 (5th Cir. 2007). In that case, the court concluded that "willfulness" in the context of the Foreign Corrupt Practices Act required only knowledge that

[7] *Ratzlaf v. United States*, 510 U.S. 135, 140–41, (1994) ("The trial judge in Ratzlaf's case, with the Ninth Circuit's approbation, treated [the statute at issue]'s "willfulness" requirement essentially as surplusage—as words of no consequence. Judges should hesitate so to treat statutory terms in any setting, and resistance should be heightened when the words describe an element of a criminal offense.") (citing *Potter v. United States,* 155 U.S. 438, 446 (1894) (word "willful" used to describe certain offenses but not others in same statute "cannot be regarded as mere surplusage; it means something")).

the acts committed were unlawful, finding that "willfulness" "does *not* generally require that the defendant knew that he was violating the specific provisions of a law." *Id.* at 451. However, the court also described three possible context-dependent meanings of "willfulness," the highest of which requires knowledge of the terms of the statute. *Id.* at 447–49.

In the instant cases, the government simply assumes, without any real support, that the statutes here are not "highly technical" and that the use of the term "willful" therein should be given the least strict interpretation—"It's definitely not a tax situation, Your Honor." (Transcript of Probable Cause Hearing rec. doc. 11 at 11, *USA v. Guerrero* (No. 25-cr-96)). As noted already, this suggestion ignores extensive legislative history suggesting that subjective knowledge is required to violate § 1306(a) and it would render the statute's use of the term "willful" as superfluous.

For additional reasons, the Court cannot agree that this statutory and regulatory scheme is not complex enough to merit heightened proof of knowledge and intent.

First, we must consider the question whether, even if an alien such as these Defendants actually knew of the registration requirement, there was a form designated for him by the government by which he could comply with it. Despite the Government's efforts to argue otherwise, the Court is utterly convinced that the law did not provide *these* Defendants—as well as millions of similarly situated individuals here without government permission—with a way to register until April 11, 2025. Indeed, as the government itself, through the Department of Homeland Security (DHS), acknowledged in February 2025 "a significant number of aliens present in the United States have had no direct way to register and meet their obligation under INA 262." USCIS, "Alien Registration Requirement,"

https://www.uscis.gov/alienregistration (last reviewed May 9, 2025). To rectify that issue, the government had to create an entirely new form for individuals who enter unlawfully to be registered at all. In explaining the "Basis and Purpose" of the Interim Final Rule announcing the form, DHS stated "[a]liens who entered without inspection and have not otherwise been encountered by DHS lack a designated registration form." *See* Alien Registration Form and Evidence of Registration, 90 Fed. Reg. at 11795 (March 12, 2025).

The anomalous situation that has persisted for over 70 years—that aliens such as these Defendants are required to apply to register but lack a government-prescribed form with which to do so, likely renders this scheme of a complex enough nature to require a heightened level of *mens rea*, as suggested by Defendants. Moreover, the Government's very argument against this proposition supports the notion that "willfulness" in § 1306(a) requires that the charged alien be aware of the application requirement before he can violate the statute.

The Government has persistently argued that these Defendants could have used any of the other numerous forms prescribed in the Code of Federal Regulations to apply to register,[8] despite (1) the numerous statements by DHS to the contrary quoted above and (2) the fact that none of these forms are designated for aliens of the Defendants' status. The Government also argues that the Defendants could simply have presented themselves to an Immigration Officer and accomplished compliance with the application requirement.[9] While the Court is unconvinced with the Government's argument, it nonetheless makes this

[8] The government cites 8 C.F.R. § 264.1(a)–(b), listing 20 mechanisms for compliance with the § 1306(a) registration requirement. (Gov't Memo rec. doc. 7 at 3–4, *USA v. Guerrero* (No. 25-cr-96)). None of those mechanisms are applicable to an alien present in the United States without permission, like the Defendants in the instant cases.

[9] The Court is not at all convinced by this conclusory argument that, by simply presenting oneself to an Immigration Officer, an unregistered alien satisfies the duty to apply for registration.

observation. The only way an alien would know to use a different form or present themselves to Immigration for registration is if he knew there was a registration requirement in the first place. This argument hardly supports the Government's position that willful failure or refusal to apply for registration does not require knowledge of that duty.

Finally, in the scarce case law that exists interpreting § 1306(a), one court carefully examined possible interpretations of the word "willfully" and concluded that the legislative history clearly supported a "willful" standard requiring subjective knowledge of the legal duty:

> The Court finds that willfulness is an essential element of the offense described in 8 U.S.C. § 1306(a), and that the term "willful" in 8 U.S.C. § 1306(a) means that Defendant must have knowledge of his duty to apply for registration and be fingerprinted under Section 1302(a) and must have deliberately failed or refused to apply for registration and be fingerprinted before he can be convicted of this crime. *See United States v. Zeid*, 281 F.2d 825, 826 (3rd Cir. 1960) (explaining that "willfulness is an indispensable element of the offense" of failure to apply for registration and be fingerprinted under an earlier version of this statute).

*United States v. Claudio-Becerra*, No. 08-cr-2305, 2008 WL 11451346, at *3 (D.N.M. Aug. 28, 2008).

The language of the entire statutory provision supports this view. Subsection (b) of § 1306—the provision immediately below § 1306(a)—creates a Class C misdemeanor for already-registered noncitizens who fail to notify the Attorney General of an address change. 8 U.S.C. § 1306(b). Unlike § 1306(a), that misdemeanor does not require a willful violation. However, in the next sentence of the same subsection the statute provides that any noncitizen convicted of failing to advise of an address change is subject to removal "unless such alien establishes to the satisfaction of the Attorney General that such failure was reasonably excusable or was not willful." *Id.* (emphasis added). The Board of Immigration Appeals has

found the use of "willful" in § 1306(b) to require some knowledge and willful violation rather than ignorant inaction. *Matter of H-*, 20 I. & N. Dec. 693, 695 (BIA 1993); *see also Ratzlaf*, 510 U.S. at 143 ("A term appearing in several places in a statutory text is generally read the same way each time it appears").

These few interpretations from other courts, combined with the extensive legislative history, and the context of the regulatory regime where § 1306(a) is located, suggests that "willfullness" as embodied in this statute requires some level of subjective knowledge and "evil intent" to violate.

### *B. The Impossibility of Compliance with § 1306(a) for These Defendants Until Very Recently*

Moreover, even were the Government able to show some knowledge of or intent to fail to register[10] under § 1306(a), as noted earlier, the law did not provide *these* Defendants—as well as millions of similarly situated individuals here without government permission—with a way to register until April 11, 2025. There is no evidence that any of these Defendants knew they were required to register under 8 U.S.C. § 1302, and even if they had, until very recently there was no mechanism for these Defendants to do so.

### *C. Lenity Principles*

Lastly, although the Court need not reach the rule of lenity, the conclusion that "willfully" in the context of § 1306(a) requires some knowledge or intent is supported by lenity principles. *Hughey v. United States,* 495 U.S. 411, 422 (1990) (lenity principles "demand resolution of ambiguities in criminal statutes in favor of the defendant"); *Crandon*

[10] The Government does not purport to have evidence that these Defendants had knowledge of or intent to violate § 1306(a) (Transcript of Probable Cause Hearing rec. doc. 11 at 8, *USA v. Guerrero* (No. 25-cr-96)) ("MR. GOVERNMENT: We are not arguing that. We are not arguing that specific knowledge of 8 U.S.C. § 1306(a) was in their head.").

*v. United States,* 494 U.S. 152, 160 (1990) ("Because construction of a criminal statute must be guided by the need for fair warning, it is rare that legislative history or statutory policies will support a construction of a statute broader than that clearly warranted by the text."); *United States v. Bass,* 404 U.S. 336, 347–350 (1971) (rule of lenity premised on concepts that "'fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed'" and that "legislatures and not courts should define criminal activity").

There is no evidence that these Defendants knew they were required to register under 8 U.S.C. § 1302, or that they willfully failed to fulfill this duty. Accordingly, in this Court's view, the "willfullness" requirement of the statute is unsatisfied and the Government has failed to establish probable cause for this reason. Additionally, the Court finds that, even had these Defendants been aware of the application requirement, there was no government prescribed form available to them once their 30 days in the United States elapsed.[9]

## III. CONCLUSION

For the reasons stated herein, and on the record,

**IT IS ORDERED** that the Bills of Information charging the above-captioned Defendants with a violation of 8 U.S.C. § 1306(a) be **DISMISSED WITHOUT PREJUDICE** for lack of probable cause.

New Orleans, Louisiana, this 19th day of May, 2025.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

[9] The Court notes here, as it did at the hearing, that in future prosecutions, the passage of time may make the absence of an appropriate form less of a concern.